UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BASF CORPORATION,<br><br>            Plaintiff,<br><br>v.<br><br>ISA S. DOUGAN, *et al.*,<br><br>            Defendants. | Case No. 1:24-cv-01115-JLT-CDB<br><br>FINDINGS AND RECOMMENDATION TO GRANT BASF CORPORATION'S MOTION FOR DEFAULT JUDGMENT AS TO BREACH OF CONTRACT CLAIMS ONLY<br><br>(Docs. 14, 19)<br><br>**14-DAY DEADLINE** |

      Pending before the Court is the motion of Plaintiff BASF Corporation ("Plaintiff") for default judgment against Defendants Isa S. Dougan, individually, and doing business as United Collision (collectively, "Defendants"), filed on January 3, 2025 (Doc. 14), with an amended motion filed on March 12, 2025 (Doc. 19). No Defendants filed an opposition to the motion and the time to do so has expired. On March 13, 2025, the Court convened for hearing on the motion. (Doc. 21). Attorney Edward Martinovich appeared on behalf of Plaintiff via Zoom videoconference and no other party appeared. (*Id.*).

**Background**

      Plaintiff initiated this action with the filing of a complaint on September 19, 2024, asserting causes of action for breach of contract, unjust enrichment, and declaratory relief. (Doc. 1). Plaintiff alleges that, on or about November 20, 2017, the parties entered into a contract (the "contract" or "Requirements Agreement") requiring Defendants to fulfill all of its "[r]efinish products" up to a minimum purchase requirement of $729,000.00 from Plaintiff. As consideration, Defendant received a sum of $200,000.00 from Plaintiff. Plaintiff also made

1   certain equipment available to Defendant, in the value of $18,910.95. (*Id.* at 3). Upon breach or
2   termination of the contract, the equipment was to be returned to Plaintiff within 30 days.
3   Separately, if Defendants breached or terminated the contract prior to satisfying the minimum
4   purchase amount of $729,000.00, Defendants were required to refund the $200,000.00
5   consideration sum, according to the following schedule: "(i) one-half of the amount of the
6   Contract Fulfillment Consideration, plus (ii) one-half of the amount of the Contract Fulfillment
7   Consideration multiplied by the percentage of the Minimum Purchases requirement outstanding."
8   (*Id.* at 4).

9       Plaintiff alleges that, in June 2023, Defendant breached the contract by ceasing to
10  purchase refinish products from Plaintiff and, instead, began purchasing them from a competitor
11  prior to meeting the minimum purchase amount. As of the date of breach, Defendants had
12  purchased a total of $146,560.87 in product. (*Id.* at 4-5). Plaintiff alleges that Defendants refused
13  to refund $180,000.00 in consideration, comprising half of the total amount of $200,000 (namely,
14  $100,000) plus half of the amount of consideration multiplied by the percentage of the minimum
15  purchase amount outstanding (namely, $100,000 multiplied by 80%, or $80,000), thus totaling
16  $180,000.00. (*Id.* at 5).

17      Plaintiff further alleges that Defendants failed to return the equipment, or pay the value
18  thereof to Plaintiff, and breached the personal guaranty clause of the contract by failing to pay
19  $180,000 in consideration, plus $582,439.13 for the balance outstanding of the minimum
20  purchase amount. Plaintiff alleges that, on October 13, 2023, a notice was sent to Defendants
21  explaining they were in default of contractual obligations, demanding return of the consideration
22  sum due and return of, or payment for, the equipment. (*Id.*). Plaintiff attaches to the complaint
23  the contract at issue (Doc. 1-1) and the notice sent to Defendants (Doc. 1-2).

24      After executed summonses were filed reflecting service upon Defendants (Docs. 5, 6),
25  Defendants failed to respond or otherwise make an appearance in this action. Upon request by
26  Plaintiff (Doc. 7), the Clerk of the Court entered default as to Defendants (Doc. 8). Plaintiff filed
27  a motion for default judgment on January 3, 2025. (Doc. 14).

28      In its motion for default judgment, Plaintiff requested varying damage totals. Plaintiff

states in its notice of motion that it is entitled to return of the $200,000 contract consideration sum. (*Id.* at 2). In the accompanying memorandum of points and authorities, it states the sum to be returned as $180,000 at first (Doc. 14-1 at 4), setting forth a formula for this number; this is also the consideration sum stated in the complaint (Doc. 1 at 6). Later in the memorandum when discussing the *Eitel* factors, Plaintiff asserts entitlement to $200,000 in contract consideration (Doc. 14-1 at 8-9). Plaintiff requests a total amount of $783,365.13 at the end of the memorandum of points and authorities (*id.* at 11), as opposed to the $781,349.98 sought in the complaint (Doc. 1 at 7). In the declaration of Christopher Banuelos accompanying Plaintiff's motion for default judgment, Plaintiff references $180,000 in consideration that Defendant refused to pay, as well as a total amount of $781,349.98 (the same amount as in the complaint). (Doc. 14-3 at 3). Additionally, Plaintiff's motion states Michigan substantive law governs BASF's breach of contract claims. (Doc. 14-1 at 6).

The Court convened for hearing on Plaintiff's motion for default judgment on February 10, 2025. (Doc. 15). During the hearing, the Court questioned counsel for Plaintiff as to the above sums and the basis for Plaintiff's requested damages, as well as the relevance of Michigan law to the claims at issue. The Court also noted that no proof of service had been filed indicating service of the motion for default judgment upon Defendants. Thus, the Court ordered Plaintiff to complete service and file proof thereof. Upon filing of said proof (Doc. 16), the Court scheduled a continued hearing regarding the motion on March 13, 2025. (Doc. 17).

Prior to this hearing, Plaintiff filed an amended motion for default judgment. (Doc. 19). In the amended motion, Plaintiff clarified that seeks only $180,000.00 in damages, representing the contract consideration sum, as well as $926.00 in costs. (*Id.* at 2-3). In addition, Plaintiff attaches a second declaration of Christopher Banuelos, stating that the "North America Automotive Coatings Refinish business" maintains a primary place of business at 26701 Telegraph Road, Southfield, Michigan. (Doc. 19-2 at 2).

**Legal Standard**

In general, "default judgments are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606,

3

616 (9th Cir. 2016) (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)).  Prior to entry of default judgment, there must be an entry of default.  *See* Fed. R. Civ. P. 55.  Upon entry of default, the factual allegations of the complaint, save for those concerning damages, are deemed to have been admitted by the defaulting party.  Fed. R. Civ. P. 8(b)(6); *see Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam).  However, "a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *United States v. Cathcart*, No. C 07-4762-PJH, 2010 WL 1048829, at *4 (N.D. Cal. Feb. 12, 2010) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)); *accord DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (allegations that do no more than "parrot" the elements of a claim not deemed admitted).  In other words, "facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

A district court has discretion to grant or deny a motion for default judgment.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment.").  The Ninth Circuit has identified seven factors to be considered by courts in reviewing a motion for default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471–72.  Entry of default judgment is not appropriate where the second and third factors weigh against plaintiff.  *See Mnatsakanyan v. Goldsmith & Hull APC*, No. CV-4358 MMM (PLAx), 2013 WL 10155707, *10 (C.D. Cal. May 14, 2013) ("The fact that factors two and three weigh against the entry of default judgment is particularly significant, as courts often treat these as the most important factors.") (citing cases).

"If the court determines that the allegations in the complaint are sufficient to establish

4

liability, it must then determine the 'amount and character' of the relief that should be awarded." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp.2d 916, 920 (C.D. Cal. 2010) (quoting 10A Charles Alan Wright *et al.*, Fed. Prac. and Proc. § 2688, at 63 (3d ed. 1998)). However, courts may decline to enter default judgment if a party's claims are legally insufficient. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *Aldabe*, 616 F.2d at 1092-93 ("Given the lack of merit in appellant's substantive claims, we cannot say that the district court abused its discretion in declining to enter a default judgment in favor of appellant").

**Discussion**

    **1. The Court has Jurisdiction Over the Action**

Federal courts are courts of limited jurisdiction and their power to adjudicate is limited to that granted by Congress. *United States. v. Summer*, 226 F.3d 1005, 1009 (9th Cir. 2000). A district court has diversity jurisdiction "where the matter in controversy exceeds the sum or value of $75,000 … and is between citizens of different states, or citizens of a State and citizens or subjects of a foreign state …" 28 U.S.C. § 1332(a)(1)-(2). Section 1332 requires complete diversity, i.e., that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67-68 (1996). The burden of proving the amount in controversy depends on the allegations in the plaintiff's complaint. *Lowdermilk v. U.S. Bank Nat'l Ass'n.*, 479 F.3d 994, 998-1000 (9th Cir. 2007).

The Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and complete diversity exists between Plaintiff and Defendants. BASF states that it is a citizen of the states of Delaware and New Jersey and Defendants are citizens of California, with United Collision's principal place of business at 4241 East Brundage Lane, Bakersfield, California. Additionally, Dougan is represented to be a citizen of California and may be personally served at his place of business, also 4241 East Brundage Lane, Bakersfield, California. Additionally, a substantial part of the events giving rise to the claims occurred in the Eastern District of California. (*See* Doc. 1).

    **2. Adequacy of Service of Process**

Before a default judgment may be entered, a plaintiff must satisfy the procedural

5

requirements of set forth in Rule 55 of the Federal Rules of Civil Procedure. "A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55. Plaintiff through counsel has submitted a declaration stating that Defendant Dougan is neither a minor nor an incompetent person. (Doc. 14-2, ¶ 6). Further, counsel asserts that, after conducting a search, Dougan is neither in the military service nor otherwise exempted under the Servicemembers Civil Relief Act. (*Id.*, ¶ 7).

"As a threshold matter in considering a motion for default judgment, the Court must first assess the adequacy of the service of process on the party against whom default is requested." *Trustees of ILWU-PMA Pension Plan v. Coates*, No. C-11-3998 EMC, 2013 WL 556800, at *4 (N.D. Cal. Feb. 12, 2013) (internal quotation and citation omitted). Under Rule 4(e), an individual may be served by: (1) delivering a copy of the summons and the complaint to that person personally; (2) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Fed. R. Civ. P. 4(e)(2). Rule 4 also permits service on an individual in accordance with state law. Fed. R. Civ. P. 4(e)(1).

"Rule 4 is a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (quoting *United Food & Commercial Workers Union v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984)). However, "without substantial compliance with Rule 4, 'neither actual notice nor simply naming the defendant in the complaint will provide personal jurisdiction.'" *Direct Mail*, 840 F.2d at 688 (quoting *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986)).

Here, the summons returned executed represents that Isa S. Dougan was served via substitute service on October 17, 2024, namely by leaving the summons and complaint with receptionist Ashley Crider at his usual place of business, 4241 East Brundage Lane, Bakersfield, California. (Doc. 5 at 1). That same day, service documents were also mailed to the same

1  address. *Id.* at 4. Substitute service was completed after four attempts at personal service. *Id.* at
2  3. This is adequate service under Rule 4(e). *See Bonita Packing Co. v. O'Sullivan*, 165 F.R.D.
3  610, 613 (C.D. Cal. 1995) ("Under C.C.P. § 415.20, substituted service may be made in
4  California by leaving a copy of the summons and complaint at the individual defendant's office,
5  dwelling house, usual place of abode, usual place of business, or 'usual mailing address other
6  than a United States Postal Service post office box.'").

7  United Collision was served via substitute service on October 15, 2024, namely by leaving
8  the summons and complaint with receptionist Ashley Crider at the address of the business, 4241
9  East Brundage Lane, Bakersfield, California. (Doc. 6).

10  Plaintiff's attempt to serve United Collision through Ashley Crider was improper. Rule 4
11  and California law require service on a corporate entity to be effected on the person designated as
12  an agent for service of process, or the "president, chief executive officer, or other head of the
13  corporation, a vice present, a secretary or assistant secretary, a treasurer, or assistant treasurer, a
14  controller or chief financial officer, a general manager, or a person authorized by the corporation
15  to receive service of process." Cal. Civ. Proc. Code § 416.10(a)-(b). Ms. Crider does not appear
16  to hold any of these positions with United Collision, and there is no indication she is the
17  designated agent for service of process.

18  However, as Plaintiff has effectuated service on Dougan, the owner of United Collision
19  (Doc. 1 at 2), the Court concludes United Collision has been adequately notified of this action.
20  Based on the foregoing, the undersigned concludes the Court has jurisdiction over Defendants.

21  **3. The *Eitel* Factors**
22  **A. Possibility of Prejudice to Principal**

23  The first *Eitel* factor requires the Court to consider the possibility of prejudice to the
24  plaintiff if a default judgment is not entered. *Eitel*, 782 F.2d at 1471. Prejudice may be shown
25  where failure to enter a default judgment would leave plaintiff without a proper remedy.
26  *Philadelphia Indem. Ins. Co. v. United Revolver Club of Sacramento, Inc.*, No. 2:18-cv-2960-
27  KJM-DB, 2020 WL 773419, at *3 (E.D. Cal. Feb. 18, 2020) (*citing Landstar Ranger, Inc*, 725 F.
28  Supp.2d at 920).

Since Defendants have refused to defend this action, if default judgment is not entered, Plaintiff would be left without a proper remedy. *See BASF Corp. v. Premier Bodyworks, Inc.*, No. 1:22-CV-01450-JLT-CDB, 2023 WL 5817611, at *7 (E.D. Cal. Sept. 8, 2023), *report and recommendation adopted*, No. 1:22-CV-01450-JLT-CDB, 2023 WL 6387244 (E.D. Cal. Sept. 29, 2023). The Court finds that the first *Eitel* factor weighs in favor of granting default judgment to Plaintiff.

### B. Sufficiency of the Complaint and the Likelihood of Success on the Merits

The second and third *Eitel* factors require the Court to consider the merits of the plaintiff's substantive claim and the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471-72. The Court considers these two factors together given the close relationship between the two inquiries. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp.2d 1039, 1055 (N.D. Cal. 2010).

These two factors will favor entry of default judgment where the complaint sufficiently states a claim for relief upon which the plaintiff may recover. *PepsiCo, Inc. v. California Security Cans*, 238 F. Supp.2d 1172, 1177 (C.D. Cal. 2010).

#### i. *Choice of Law*

The contract contains a choice-of-law provision that indicates Michigan law governs. (Doc. 1-1 at 4). As a preliminary matter, the Court must determine which state law governs the contract at issue. "Federal courts sitting in diversity look to the law of the forum state when making choice of law determinations." *Hoffman v. Citibank, N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008) (citing *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005)). California courts analyze "(1) whether the chosen state has a substantial relationship to the parties or their transaction, or (2) whether there is any other reasonable basis for the parties' choice of law." *Schmidt v. Trinut Farm Mgmt., Inc.*, 92 Cal. App. 5th 997, 1007–08 (2023). If a party is domiciled in the state at issue, then a substantial relationship between the choice-of-law state and the parties or their transaction exists. *Nedlloyd Lines B.V. v. Super. Ct.*, 3 Cal. 4th 459, 467 (1992). If one of the contracting parties resides in the choice-of-law state, then a reasonable basis exists. (*Id.*). If neither factor exists, the inquiry ends and the court "need not enforce the parties' choice of law." *Schmidt*, 92 Cal. App. 5th at 1008.

8

If either factor is met, a court must next analyze whether the chosen state's law is "contrary to a fundamental policy of California." If no such conflict exists, a court shall enforce the parties' choice of law. If there is such a conflict, the court must then determine if California has a "materially greater interest than the chosen state in the determination of the particular issue." If the court so determines, then the choice of law shall not be enforced. (*Id.*).

Here, none of the parties are domiciled in Michigan. The record does not indicate that the contract was negotiated, executed, or performed in Michigan. Plaintiff attaches the declaration of Christopher Banuelos to its motion, stating that the "North America Automotive Coatings Refinish business" maintains a primary place of business at 26701 Telegraph Road, Southfield, Michigan 48033. (Doc. 19-2 at 2). It is unclear whether this is a separate business, a subsidiary of Plaintiff, or another type of entity. Regardless, Plaintiff states in the complaint that it is a citizen of Delaware and New Jersey. (Doc. 1 at 2). No other entities identified in Plaintiff's pleadings appear to be Michigan citizens (Doc. 1-4) and "North America Automotive Coatings Refinish business" is not mentioned in the complaint or elsewhere in this action.

The undersigned has not identified any reasonable basis for Michigan law governing this dispute. Accordingly, there is no substantial relationship nor reasonable basis for application of Michigan law and the Court will apply the law of California.

### ii.   **Breach of Contract**

Plaintiff raises a cause of action for breach of contract against Defendants. To succeed on a claim for breach of contract under California law, a plaintiff must establish (1) a valid contract, (2) performance by plaintiff or an excuse for nonperformance, (3) defendant's breach, and (4) damages. *Amelco Electric v. City of Thousand Oaks*, 27 Cal. 4th 228, 243 (Cal. 2002). A valid contract exists if the parties to the contract are capable of contracting, both parties consent to the contract's terms, a lawful object is present, and sufficient consideration exists. *United States ex rel Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999).

Accepting Plaintiff's well-pleaded factual allegations as true, Plaintiff has established that Defendants breached a valid contract. Plaintiff and Defendants entered into a valid contract, the Requirements Agreement, to buy and sell refinish products. Additionally, Dougan is an adult

9

capable of contracting and consented to personally guarantee United Collisions' performance. There is no evidence to suggest that Defendants did not intend to be legally bound by the Requirements Agreement and its terms. Further, Plaintiff alleges it has performed and fulfilled all obligations and conditions required under the agreement, by paying the promised consideration and loaning equipment to Defendants, and remains ready, willing, and able to perform all obligations, conditions and covenants, required under the Requirements Agreement. (*See* Docs. 1, 14).

Defendants breached the contract, including Dougan's personal guarantee, by failing to purchase enough refinishing products to meet the minimum requirements, refund the consideration pursuant to the agreement, and to return or repay the value of the loaned equipment. Plaintiff has alleged that it has suffered damages as a result of this breach. Therefore, Plaintiff has sufficiently alleged a breach of contract claim against both Defendants.

### iii.  Unjust Enrichment

Plaintiff also brings a cause of action for unjust enrichment against both Defendants. Generally, California law does not permit a standalone cause of action for unjust enrichment where an enforceable written contract governs the same subject matter. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010)).

Here, Plaintiff cannot prevail on its cause of action for unjust enrichment because the parties entered into an express agreement (the contract) that covers the subject matter of this action. Plaintiff's unjust enrichment claim is based on Defendants' failure to return the loaned equipment or its applicable value and consideration with the applicable additional fee. The Requirements Agreement sufficiently defines the rights and obligations of the parties as to the aforementioned consideration, loaned equipment, and applicable penalties. Accordingly, Plaintiff's unjust enrichment claim fails as a matter of law.

### iv.  Declaratory Relief

Plaintiff's final cause of action is for declaratory relief. In California, "a court may refuse [to grant declaratory relief] in any case where its declaration or determination is not necessary or

proper at the time under all the circumstances." Cal. Civ. Proc. Code § 1061. "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *United States v. Washington*, 759 F.2d 1353, 1357 (9th Cir. 1985).

Here, Plaintiff fails to demonstrate that declaratory relief will serve any useful purpose or settle unresolved legal issues. The requested judicial declaration is duplicative of Plaintiff's breach of contract claim. The Court's grant of Plaintiff's breach of contract claim will afford Plaintiff full relief, and therefore declaratory relief is unnecessary. *See United Safeguard Distrib.'s Ass'n. Inc. v. Safeguard Bus. Sys., Inc.*, 145 F. Supp.3d 932, 961 (C.D. Cal. 2015) ("[C]ourts have found that where 'a breach of contract claim resolved all questions regarding contract interpretation, [it renders] declaratory judgment duplicative.'") (citations omitted). For this reason, Plaintiff's declaratory relief claim also fails.

### C. Sum of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of the defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp.2d at 1176-77. The amount at stake must not be disproportionate to the harm alleged. *See Lehman Bros. Holdings. Inc. v. Bayporte Enters. Inc.*, 2011 WL 614079, at *7 (N.D. Cal. Oct. 7, 2011). Default judgment is generally disfavored when the sum of money at stake is either too large or unreasonable in light of a defendant's actions. *G & G Closed Circuit Events, LLC v. Nguyen*, 2012 WL 2339699, *2 (N.D. Cal. May 30, 2012). Generally, courts have found that this factor presents no barrier to default judgment even when millions of dollars were at stake, as long as the potential damages were proportional to the harm alleged. *Global Commodities Trading Group, Inc., et al. v. Beneficio De Arroz Choloma, S.A., et al.*, No. 2:16-cv-1045-TLN-CKD, 2022 WL 1439499, at *5 (E.D. Cal. May 6, 2022) (citations omitted), *F&R adopted*, 2022 WL 2818658 (July 19, 2022).

Plaintiff seeks to recover $180,000.00 in consideration and $926.00 in costs. Plaintiff has provided adequate evidence in the form of documentation and declarations to support its claim for

11

1  total harm it sustained. (Doc. 19). Moreover, Plaintiff's witness Christopher Banuelos attested to
2  the value of the consideration. (Doc. 14-3 at 3). Accordingly, the money sought by Plaintiff is
3  proportionate to the harm caused by Defendants, and this factor weighs in favor of granting
4  default judgment.

### D. Possibility of Disputed Material Facts

The fifth *Eitel* factor requires the Court to consider whether a dispute exists regarding material facts. *Eitel*, 782 F.2d at 1471-72. Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is unlikely. *Landstar Ranger*, 725 F. Supp.2d at 921-22. Here, since Defendants are in default, all of Plaintiff's well pleaded factual allegations are taken as true. *TeleVideo Sys., Inc.*, 826 F.2d at 918 (citing *Geddes*, F.2d at 560).

Since Plaintiff's factual allegations are presumed true in this context and Defendants failed to move to set aside the default, no factual dispute exists that would preclude the entry of default judgment. *Vogel v. Rite Aid Corp.*, 992 F. Supp.2d, 998, 1013 (C.D. Cal 2014). Thus, this factor weighs in favor of default judgment.

### E. Excusable Neglect

The sixth *Eitel* factor requires the Court to consider whether a defendant's default was due to excusable neglect. *PespiCo*, 238 F. Supp.2d at 1177; *Eitel*, 782 F.2d at 1471-72. This factor implicates due process and whether defendants are "given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objection before a final judgment is rendered." *Phillip Morris USA, Inc. v. Castworld Productions*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

Upon review of the record before the court, there is clear indication that the default was not the result of excusable neglect. Defendants were served with the summons and complaint. (Docs. 5, 6). The Clerk of the Court entered default on November 13, 2024. (Doc. 8). Defendants were served with the motion for default judgment (Doc. 16) and the amended motion, as well (Doc. 20). Defendants have not appeared in this action. It is evident that Defendants received reasonable notice of the pendency of this action but, nevertheless, declined to appear. Accordingly, this factor favors entry of default judgment. *See Magic Leap, Inc. v. Tusa Tuc*, No.

17-cv-00264 NC, 2017 WL 10456729, at *3 (N.D. Cal. Aug. 17, 2017).

### F. Policy of Deciding Cases on the Merits

The seventh *Eitel* factor emphasizes the "general rule that default judgments are ordinarily disfavored." *Eitel*, 782 F.2d at 1472. "Cases should be decided upon the merits whenever reasonably possible." *Id*. (citing *Pena v. Seguros La Comersial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985)). Defendants' refusal to participate in this action renders a decision on the merits virtually impossible. This factor does not weigh against default judgment.

### 4. Relief

Having determined that entry of default judgment is warranted, the undersigned must now consider Plaintiff's requested relief. The undersigned does not take Plaintiff's factual allegations concerning damages as true. *TeleVideo*, 826 F.2d at 917-18. Rather, Plaintiff must offer proof of the damages sought. *Id*. Plaintiff seeks $180,000.00 in liquidated damages for the consideration and $926.00 in costs.

"Liquidated damages constitute a sum which a contracting party agrees to pay or a deposit which he agrees to forfeit for breach of some contractual obligation." *ABI, Inc. v. City of Los Angeles*, 153 Cal. App. 3d 669, 685 (2011). Here, the consideration sum listed in the Requirements Agreement constitutes liquidated damages to be paid based on different degrees of breach. (*See* Doc. 1). If the amount of liquidated damages is disproportionate to the actual damages anticipated, then the provision is considered a penalty and unenforceable. *Howard v. Babcock*, 6 Cal. 4th 409, 425 (1993). "Whether an amount to be paid upon breach is to be treated as liquidated damages or as an unenforceable penalty is a question of law" to be decided by the court. *Harbor Island Holdings v. Kim*, 107 Cal. App. 4th 790, 794 (2003).

Under the Requirements Agreement, if Defendants breached the contract and purchased less than the minimum purchase requirement, Defendants were required to refund the $200,000.00 consideration sum, according to the following schedule: "(i) one-half of the amount of the Contract Fulfillment Consideration, plus (ii) one-half of the amount of the Contract Fulfillment Consideration multiplied by the percentage of the Minimum Purchases requirement outstanding." (Doc. 1 at 4; Doc. 1-1 at 3-4).

13

1  Here, Defendants breached the contract prior to purchasing the minimum amount.
2  Therefore, under the contract, Defendants owe one-half the consideration ($100,000) plus one-
3  half of the consideration multiplied by the percentage of the minimum purchase amount
4  outstanding ($100,000 multiplied by $582,439.13/$729,000.00), namely $179,895.62.  (Doc. 1 at
5  4-5).  Accordingly, the undersigned concludes that the amount requested is not disproportionate
6  to the actual damages.  *See, e.g., BASF Corp. v. SSM Auto. Grp., Inc.*, 2022 WL 2288427, at *6
7  (C.D. Cal. May 17, 2022).  Accordingly, the undersigned shall recommend an award to Plaintiff
8  of $179,895.62 in liquidated damages.

9  Regarding Plaintiff's request for inclusion of taxable costs in the default judgment, as
10 addressed during the motion hearing (Doc. 21), to the extent Plaintiff seeks recovery of taxable
11 costs, it may file a bill of costs with the Clerk of the Court following entry of judgment.

*Remainder of This Page Intentionally Left Blank*

**Conclusion and Recommendation**

For the reasons set forth above, the undersigned RECOMMENDS the following:

1. Plaintiff's motion for default judgment (Docs. 14, 19) on Plaintiff's breach of contract claims be GRANTED;

2. Plaintiff's motion for default judgment (*id.*) on Plaintiff's unjust enrichment and declaratory relief claims be DENIED;

3. Plaintiff be awarded $179,895.62 in liquidated damages against Defendants; and

4. The Clerk of Court be directed to close this case.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 24, 2025**                                    _____
                                                                                         UNITED STATES MAGISTRATE JUDGE